## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RODNEY A. BALLARD, | ) | CASE NO. 4:07CV3122 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| DAVID HEINEMAN, Governor, | ) | AND ORDER |
| individually, JON BRUNING, Attorney | ) | |
| General, individually, and TROOPER | ) | |
| NO. 371, individually, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motions for Summary Judgment submitted by Defendant Attorney General Jon Bruning ("Bruning")(Filing No. 53), Defendant Governor David Heineman ("Heineman")(Filing No. 54), Defendant Trooper Dean Riedel a/k/a Trooper No. 371 ("Riedel")(Filing No. 62), and Plaintiff Rodney A. Ballard ("Ballard")(Filing No. 69). For the reasons stated below, the Plaintiff's motion will be denied, the Defendants' motions will be granted,[1] and the Plaintiff's Amended Complaint will be dismissed, with prejudice.

## PROCEDURAL BACKGROUND

Ballard alleges that he was a victim of a racially-motivated traffic stop and subsequent search and seizure, on November 14, 2005. (Amended Complaint, Filing No. 14). Ballard contends that Riedel, a Nebraska State Patrol Trooper, effected the traffic

---

[1]Although the Defendants' motions are captioned as motions for summary judgment based on qualified immunity, each motion states alternatively that summary judgment is sought for the reason that "the pleadings together with the affidavits that accompany this Motion, show that there is no genuine issue as to any material fact and the [defendant] is entitled to a judgment as a matter of law." (Filing Nos. 53, 54, 62). The Court's analysis herein is not based on issues of qualified immunity, but proceeds under Fed. R. Civ. P. 56(c).

stop and the search and seizure due to policies instituted by Heineman and Bruning, whereby troopers were encouraged to target racial minorities when exercising law enforcement functions.  (*Id.* ¶ 35).

On August 27, 2007, this Court ruled on the Defendants' motions to dismiss in which they raised, among other issues, claims to qualified immunity from suit.  (Memorandum and Order, Filing No. 14).  The Court required that Riedel, in his individual capacity, respond to the First and Second Causes of Action in the Complaint, alleging an unreasonable search and seizure and a due process violation under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983; and required Bruning and Heineman to respond to the Fourth Cause of Action, alleging an unreasonable search and seizure and equal protection violation under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

The Defendants filed Answers as ordered (Filing Nos.  50, 51, 52); each moved for summary judgment (Filing Nos. 53, 54, 62); and the Plaintiff filed his own motion for summary judgment against Riedel on the issue of liability (Filing No. 69).  All four motions have been fully briefed and the Court has considered all evidence submitted by the parties in support of and in opposition to the pending motions.

**FACTS**

The Defendants' briefs in support of their motions for summary judgment contain statements of fact in compliance with NECivR 56.1(a).  (Filing No. 57, pp. 2-6; Filing No. 58, pp. 2-6, Filing No. 64, pp. 2-4).  Each statement of fact is supported by pinpoint references to the evidentiary materials relied upon, and the evidentiary materials have been submitted in compliance with NECivR 7.1(a)(2).  (Filing Nos. 55, 63, 68).  The Plaintiff

2

has not responded to those facts as required by NECivR 56.1(b), and the Defendants'
statements of fact, summarized below, are "deemed admitted." NECivR 56.1(b)(1).

On November 14, 2005, Ballard was a passenger in an automobile traveling on
Interstate 80 in Lincoln County, Nebraska. Ballard and the other two occupants of the
vehicle are African American. Riedel stopped Ballard's vehicle because he observed that
it was speeding and following too closely to another vehicle. During the stop, Riedel also
observed that (1) the vehicle was rented, but the occupants acknowledged that they had
not rented it, (2) the occupants could not produce the rental agreement, (3) while looking
for the agreement, the occupants avoided looking in a certain "Adidas" bag, (4) information
the occupants provided to Riedel was inconsistent, and (5) at least two of the occupants
had drug-related criminal histories. (Affidavit of Dean Riedel ("Riedel Aff."), Filing No. 63-3,
¶¶ 2-21). Riedel obtained permission from the occupants to search the vehicle, their
luggage and their coats. Ballard told Riedel that he had no luggage, only a coat, and gave
Riedel permission to search the coat. Riedel discovered cocaine in the Adidas bag, and
placed the three occupants under arrest. Ballard later admitted that the Adidas bag
belonged to him. (*Id.*, ¶¶ 22-27). Riedel gave no consideration to the race of the driver or
the occupants of the vehicle when he effected the stop, search and seizure of November
14, 2005. (*Id.*, ¶¶ 32-34).

On May 16, 2006, a judge of the District Court of Lincoln County, Nebraska, granted
Ballard's motion to suppress the evidence, finding that the occupants of the vehicle had
not consented to a search of the vehicle and luggage, and that the search was not
supported by probable cause. (Filing No. 63-2).

3

Neither Bruning nor Heineman had any involvement in the traffic stop.  Neither of them instituted, implemented or had any knowledge of any alleged Nebraska State Patrol policies or practices taking the race of motorists into account in connection with the stop and search of vehicles.  The training procedures and techniques used by the Nebraska State Patrol regarding traffic stops, searches, and seizures in fact have never taken the race of motorists into account.  (Affidavit of Jon Bruning, Filing No. 55-1, Ex. 1, ¶¶ 2-9; Affidavit of David Heineman, Filing No. 55-1, Ex. 2, ¶¶ 2-9; Affidavit of Bryan Tuma, Filing No. 55-1, Ex. 3, ¶¶ 1-29; Riedel Aff. ¶¶ 35-43).

### STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109-10 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus.*

4

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

A law enforcement officer's stop of an automobile results in a seizure of both the driver and the passenger, and the passenger has standing to object to an unreasonable seizure on Fourth Amendment grounds.  *Brendlin v. California*, 127 S. Ct. 2400, 2407-08 (2007); *United States v. Ameling*, 328 F.3d 443, 446-47, n.3 (8th Cir. 2003).  The constitutionality of a traffic stop depends upon whether the officer had an objectively reasonable belief that a law had been violated.  *United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006).  The subjective intent of the police officer is not relevant.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 363 (2001) (citing *Whren v. United States*, 517 U.S. 806, 818 (1996)).

5

Ballard's allegations in his Amended Complaint were sufficient to withstand the Defendants' motions to dismiss in which they raised the issue of qualified immunity. (See Memorandum and Order at Filing No. 48, pp. 6-8). In response to the Defendants' motions for summary judgment and the evidence presented in support of their motions, however, Ballard cannot rest on the allegations in his Amended Complaint. A plaintiff, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Ballard presented no affidavits, depositions, answers to interrogatories, or admissions in opposition to the Defendants' motions. The only "evidence" he presented was (1) the order of the District Court of Lincoln County, Nebraska, in which the judge decried the evils of racial profiling and expressed his support for the dissenting opinion in *Atwater,* 532 U.S. at 360-73 (Filing No. 63-2)[2], and (2) a report of the Nebraska Commission on Law Enforcement and Criminal Justice dated April 1, 2007 (Filing No. 68-3). According to the report,[3] 2005 population statistics show that African Americans represent 4.3 percent of the Nebraska population. (*Id.* at p. 9). In 2005, however, 5.0 percent of Nebraska traffic stops involved African Americans (*id.* at p. 13); 4.1 percent of traffic stops involving African Americans included a search, compared to 3.3 percent of all traffic stops (*id.* at p. 21); and, 19.8 percent of traffic stops involving African Americans resulted in custodial arrest, compared to 4.6 percent of all traffic stops (*id.* at p. 19).

---

[2] Ballard filed partial copies of the order. (Filing Nos. 68-2, 71-2). The complete order was filed by the Defendants at Filing No. 63-2.

[3] All page references are to the electronic-filing pagination.

6

Ballard asserts that this Court should accept the order of the District Court of Lincoln County as "claim preclusion and issue preclusion," to bar relitigation of the underlying facts as they relate to Riedel.

"The doctrine of res judicata, or claim preclusion, bars the relitigation of a § 1983 claim if the prior judgment was a final judgment on the merits rendered by a court of competent jurisdiction, and if the same cause of action and the same parties or their privies were involved in both cases." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007), citing *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir. 1989). "The doctrine of collateral estoppel, also known as issue preclusion, provides that 'when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit.'" *Chavez v. Weber*, 497 F.3d 796, 803 (8th Cir. 2007), citing *United States v. Brekke*, 97 F.3d 1043, 1049 (8th Cir. 1996).

The order of the District Court of Lincoln County, Nebraska, addressed a motion to suppress in a criminal proceeding. The criminal proceeding did not involve the same parties to this action. As Riedel reasonably argues, he was merely a witness in the criminal proceeding. He was not represented by counsel; he had no right to direct the questions that were presented to him, nor any opportunity to call or cross-examine other witnesses, nor any right to present other evidence, nor any right to present written or oral argument. This Court must conclude that the findings of the District Court of Lincoln County have no application in this proceeding through the doctrine of res judicata or issue preclusion because that action did not involve the same parties or privies.

The judge of the District Court of Lincoln County, after expressing his preference for a "heightened scrutiny suggested by the dissenters in *Atwater,* to insure that racial profiling,

7

prohibited by statute, is not ignored but taken into consideration in determining the outcome of the matter" (a motion to suppress), noted that he "need not engage in such an analysis in this case."[4]  (Filing No. 63-2, p. 7).  Thus, there was no factual determination related to Ballard's claim of racial profiling.  Rather, the District Court of Lincoln County stated that the search of the vehicle was not based on consent or probable cause.  Even if the District Court of Lincoln County *had* made a determination of an issue of ultimate fact material to this case relative to the constitutionality of the search itself, collateral estoppel or issue preclusion still could not be used in this case, because the matter before that court was not litigated between the same parties involved in the present action.  *See Chavez v. Weber*, 497 F.3d at 804.

While the statistical data presented by Ballard are interesting, they raise no genuine issue of material fact to be decided in this case.  Ballard has not met his burden under Fed. R. Civ. P. 56(e) of setting forth specific facts showing that there is a genuine issue for trial, and the Defendants' motions for summary judgment will be granted.

---

[4]Justice Sandra Day O'Connor wrote the dissenting opinion in *Atwater v. City of Lago Vista,* 532 U.S.  at 360-373.  Justice O'Connor has also said: "[T]he Constitution is interpreted first and last by people other than judges. The judicial branch is only an intermediate step in the continuing process of making our Constitution work. . . . Some might find it a bit frightening to consider that the responsibility for protecting our Constitution rests not just on judges but on a host of others as well. . . . I find that system quite comforting.  By spreading the responsibility to uphold the Constitution among so many, the Framers enlisted a legion of defenders for their new charter. . . . [The Constitution] was not intended solely, or even primarily, for judges. . . . Our Constitution is not – and could never be – defended only by a group of judges." The Majesty of the Law, Sandra Day O'Connor, 2003, pp. 41, 46-47.  There is no evidence before this Court indicating that Trooper Riedel took his responsibility for upholding the Constitution, and respecting the constitutional rights of others, less seriously than any judge.

**CONCLUSION**

The uncontroverted evidence submitted by the Defendants in support of their motions for summary judgment shows that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law.

IT IS ORDERED:

1.      The Plaintiff Rodney A. Ballard's Motion for Summary Judgment Against Defendant Trooper No. 371 (Filing No. 69) is denied;

2.      The Defendant Attorney General Jon Bruning's Motion for Summary Judgment (Filing No. 53) is granted;

3.      The Defendant Governor David Heineman's Motion for Summary Judgment (Filing No. 54) is granted;

4.      The Defendant Trooper No. 371 a/k/a Dean Riedel's Motion for Summary Judgment (Filing No. 62) is granted;

5.      The Plaintiff's Amended Complaint is dismissed, with prejudice, and

6.       A separate judgment will be entered.


DATED this 15th day of November, 2007.

                                        BY THE COURT:


                                        s/Laurie Smith Camp
                                        United States District Judge

9